[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter came to trial before the Court sitting without a jury at which time the following facts were established.
In February of 1982, Inn Group Associates (hereinafter "IGA") entered into a Management Agreement with Joseph Griffiths (hereinafter "Griffiths") for the purpose of operating the Inn on the Harbor and Astor's restaurant, located on Thames Street in Newport, Rhode Island. The Inn on the Harbor and Astor's restaurant are condominium units located within the Landing Condominium, designated unit L-1 and unit L-C-1 respectively.
Following a series of differences between the parties, IGA terminated the Management Agreement in accordance with the terms therein on or about October 10, 1984. In attempting to settle their differences, the parties executed an Agreement and Release on February 22, 1985. Pursuant to the Agreement, IGA agreed to sell Astor's Restaurant to Griffiths in consideration of a loan to Griffiths in the amount of One Hundred and Thirty Thousand Dollars ($130,000.00). A promissory note for this amount was then executed between the parties and this obligation was further secured by a second mortgage on the Astor's Restaurant property. Astor's Restaurant was thereafter conveyed to Astoria Realty Trust (hereinafter "ART"), with Griffiths as trustee.
In addition to the execution of the promissory note and the mortgage on May 13, 1985, Griffiths ART, and a related entity executed an Operation and Cooperation Agreement detailing various obligations of the parties relating to parking as well as the payment of certain common expenses.
IGA assigned the Note and the Mortgage to Old Colony Bank at the time of the transfer of Astors Restaurant to ART. The assignment was made by IGA pursuant to an Assignment and Pledge Agreement and the mortgage was assigned to Old Colony bank in accordance with the provisions of an Assignment of Mortgage. On or about May 8, 1987 Old Colony Bank's successor in title, Bank of New England Old Colony, N.A., re-endorsed the note back to IGA and also provided IGA with a Discharge of Assignment and Pledge Agreement.
At this time, a number of disputes arose between ART, IGA and the Landing Condominium Association (hereinafter "LCA") regarding parking and expense allocations for various costs. As a result of the failure by ART to remit such sums IGA alleges ART owes, IGA initiated foreclosure proceedings under the belief that ART's failure to pay these expenses constituted a default under the mortgage and the agreement. Due to the initiation of the foreclosure proceedings, ART, Griffiths and Astor's Restaurant, Inc. filed Civil Action number 87-0342 in this Court. The plaintiffs' complaint consisted of the following five counts: Count I was for a stay of foreclosure; Count II was for a stay of the denial of approximately 32 parking spaces that the plaintiff believed it was entitled to occupy throughout the common areas of the Landing Condominium; Count III was for alleged overcharges made by the LCA; Count IV was for alleged overcharges made by IGA; Count V was for interference by IGA with contract rights previously established by the plaintiffs. Both IGA and the LCA filed counterclaims.
Certain aspects of this dispute then came before the Court. Justice Needham then ruled that ART continue to pay IGA in accordance with the mortgage and the promissory note between the parties. ART successfully obtained an injunction barring foreclosure. On May 1, 1990, the principal sum under the promissory note became due and the obligors failed to remit all sums owed to IGA. Thereafter, IGA initiated a separate action (C.A. 90-0341) against Griffiths, Inc. and ART in order to collect the $130,000.00 owed under the note. C.A. 90-0341 and C.A. 87-0342 were then consolidated for trial by the Court.
QUESTIONS PRESENTED
There are presently two issues before the Court. One issue to be decided is whether the One Hundred and Thirty Thousand Dollar ($130,000.00) mortgage has been discharged by Bank of New England — Old Colony, N.A. A second question concerns the propriety of certain condominium fees and other charges assessed against ART.
THE MORTGAGE
Griffiths and Art contend that as a result of the recording of the discharge of Assignment and Pledge Agreement, the mortgage is no longer valid security for the note executed by Griffiths, ART and a related entity. Meanwhile, IGA contends that it has legal title to the mortgage and is also entitled to collect on the note as well as the mortgage
ART argues that under §§ 34-11-23 and 34-11-24 of the Rhode Island General Laws, the Discharge of Assignment and Pledge Agreement constitutes a discharge of the mortgage. However §34-11-23 applies solely to mortgages to secure future loans and is therefore inapplicable to the case at bar. Moreover, §34-11-24 is silent as to discharges and mortgages. § 34-11-4, however, is applicable: That section provides as follows:
 Any form of conveyance in writing duly signed and delivered by the Grantor . . . shall be operative to convey to the Grantee all possessions, estate, title and interest . . . of the Grantor . . . and if also duly acknowledged and recorded, shall be operative as against third parties.
§ 34-11-11 of the General Laws further provides that the statutory forms set forth in § 34-11-12 "shall not preclude the use of other forms." Therefore, although not included among the forms listed in § 34-11-12, the Discharge of Assignment in the present matter is not precluded by statute.
An examination of the Discharge of Assignment and Pledge Agreement reveals that there is nothing within the four corners of the document that in any way refers to a discharge of the mortgage. The Court would further note that Bank of New England — Old Colony, N.A.'s re-endorsement of the note back to IGA is not consistent with an intent on its part to discharge the Mortgage of ART. Thus, it would be instructive at this juncture to address the legal effect of the Discharge of Assignment and Pledge Agreement.
In Activated Sludge, Inc. v. Sanitary District of Chicago,33 F. Supp. 692, 696 (N.D. Ill. 1940), the Court pointed out that where a written instrument has been redelivered and surrendered to the assignor with the agreement that the original assignment shall be void, this operates at least in equity as a reassignment. The Court also noted that where the instrument is redelivered to and remains in the possession of the assignor together with its formal cancellation, he may recover without proof of formal reassignment to him. Id. No matter what the language, no matter how informal the transaction appears to be, if the attendant circumstances indicate that the intentions of the parties is to effectuate a transfer supported by valuable consideration with redelivery, at least in an equitable sense a retransfer is thereby effectuated. Id. The Court in that case was apparently of the opinion that the assignor could recover from the debtor without proof of formal assignment.
In the case at bar, the Discharge of Assignment and pledge agreement are in fact writings which evidence the transfer. Thus, this Court finds that the circumstances surrounding this transaction clearly demonstrate that the parties intended to and there actually was a retransfer to IGA of all rights, title and interest previously held by Bank of New England — Old Colony, N.A. under the mortgage. Having obtained legal title to the mortgage, IGA is therefore entitled by law to collect on the note and proceed if necessary with foreclosure on the mortgage.
Therefore, with respect to the complaint in C.A. 90-0341 and the counterclaim in C.A. 87-0342, the Court finds that the following sums are due and owing to IGA: (1) $130,000.00 in principal (2) $19,499.94 in interest on the note through June 1, 1991 (3) $7,583.44 in late fees under the note through June 1, 1991 and (4) such additional interest and late charges as have accrued since June 1, 1991. Furthermore, in light of these findings, the injunction enjoining IGA from foreclosing on its mortgage is hereby vacated. In the event such sums owed under the note are not remitted to IGA, IGA may proceed to foreclosure.
CONDOMINIUM FEE DISPUTE AND OTHER CHARGES
Condominium Fee Dispute:
The Court will now address whether the Landing Condominium Association may charge ART more than 4.78% of the condominium budgets. That percentage represents the amount to be allocated to unit L-C-1 as set forth in the ART deed, and the Declaration of Condominium. More, specifically, regarding trash removal, ART asserts that it never agreed to an assessment of fifty percent of the trash-related costs. The minutes of the LCA meetings in 1986, 1987 and 1988 indicate that there was a continuing dispute between ART and LCA regarding the rubbish charges and assessments. Following the purchase of the trash compactor by the LCA, unit L-C-1 was retroactively assessed a charge of 50% of the cost of the compactor. Notably, there were no documents or testimony entered into evidence which demonstrate that ART agreed to this assessment.
General Laws 1956 (1984 Reenactment) § 34-36-1 et seq. sets forth the provisions of the Rhode Island Condominium Ownership Act. Section 34-36-24 provides that condominium unit fees are to be assessed in proportion to the percentage interests of each condominium unit. Section 34-36-24 reads as follows:
 Unless otherwise provided in the declaration or lawful amendments thereto, the common profits of the property shall be distributed among, and the common expenses of the property shall be charged to, the unit owners according to the percentage of their undivided interest in the common areas and facilities.
Although the act,[1] the condominium declaration, and the condominium by-laws provide LCA is with substantial rights to establish and collect assessments for benefit conferred upon specific owners, the Court finds that proper procedures were not adhered to by LCA to impose charges for such benefits in the areas of the management bill, rubbish, legal fee insurance, electric and other payments.[2] Furthermore, the evidence is not persuasive that ART in fact was the recipient of the benefits for which these assessments were made beyond its 4.78% obligation. Accordingly, charges at a rate higher than 4.78% are recoverable by ART. The total amount of overcharges is to be calculated by the parties and submitted to Court for entry of judgment.
With respect to lost interest earnings as to the rubbish overpayments and insurance premiums, the Court finds that ART is not entitled to recovery. The Court finds that such interest will be sufficiently compensated through prejudgment interest[3].
Other Charges:
The Court agrees with IGA that certain expenses pertaining to phone and long distance charges, the RCA equipment, the HBO Antenna, Water, Security, the Munson judgment and other miscellaneous charges were incurred for ART's benefit and that ART knowingly received and acquiesced in the receipt of such benefits and therefore is responsible for the payment of the same. However, the Court rejects this argument as it pertains to the St. Spyridon's parking lot. To this end, the Court finds that the evidence is not sufficient to establish that a special benefit was conferred upon unit L-C-1. Moreover, whether or not the Operation and Cooperation agreement remained in effect, the Court finds that the parking and attendant service which should have been available to ART for the benefit of both its employees and patrons was not provided.
The Court further finds that Griffith's testimony relating to lost rent, and lost business was not credible. His claim for damages relating to these areas is highly speculative. Simply stated, it was not presented with sufficient precision to warrant any award.
Based on the findings herein, the Court instructs counsel to prepare a form of judgment and incidental thereto to calculate the sums owing by and to the various parties. In the event dispute arises as to these calculations counsel are the directed to appear before the Court at which time said calculations shall be made by the Court with the input of counsel.
[1] The court need not address whether the act in existence prior to 1982 or the one enacted thereafter is applicable. Either act when read in conjunction with the applicable condominium declaration and by-laws, if appropriate procedures are followed, would permit the imposition of charges upon owners who receive a specific benefit therefrom.
[2] Many of these charges were assessed by IGA, not LCA which was the proper party to make the assessment. Moreover, proper procedure under both the Condominium Declaration and by-laws were not followed.
[3] In regard to the slander of title claim, the Rhode Island Supreme Court discussed the standards for proving this cause of action in Deleo v. Anthony A. Nunes, Inc., 346 A.2d 1344 (R.I. 1988). The court noted that there must be a showing that the defendant's statements about the plaintiff's ownership of property were communicated with a malicious intent. Id. at 1346. To establish malice, the record must present evidence that a false statement is made with full knowledge of its falsity, and for the specific purpose of injuring the plaintiff. Id. In the case at bar, the evidence before the Court is insufficient to sustain ART's claim of slander of title against LCA. That is, the record is devoid of any evidence tending to prove that the LCA acted with malicious intent.